IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| KAREN L. MATAR,<br><br>Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,<br><br>Defendant. | CV 17-144-BLG-TJC<br><br>**ORDER** |

On October 30, 2017, Plaintiff Karen L. Matar ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security (the "Commissioner") regarding the denial of her request that an overpayment of disability insurance benefits be waived. (Doc. 2.) On January 2, 2018, the Commissioner filed the Administrative Record ("A.R."). (Doc. 7.)

Presently before the Court is Plaintiff's motion for summary judgment, requesting the Court set aside the decision of the Commissioner, grant Plaintiff's request for a waiver, and recalculate the overpayment. (Doc. 12.) The motion is fully briefed and ripe for the Court's review. (Docs. 13, 14.)

1

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court finds Plaintiff's motion should be **GRANTED**, and the Commissioner's decision should be **REVERSED**.

## I. PROCEDURAL BACKGROUND

Plaintiff began receiving disability insurance benefits ("DIB") in July 1990. (A.R. 12.) In July 2010, the Social Security Administration ("SSA") notified Plaintiff that she was no longer entitled to DIB payments, and that she had been overpaid. (A.R. 21.) Subsequently, the SSA sent Plaintiff a letter indicating she was overpaid in the total amount $27,497.70.[1] (A.R. 33-37.)

Plaintiff requested that recovery of the overpayment be waived. (A.R. 113.) The SSA denied her request initially and after a personal conference. (A.R. 44, 46, 49-51.) On April 9, 2015, Plaintiff filed a written request for a hearing. (A.R. 59.) Administrative Law Judge Michele M. Kelley (the "ALJ") held a hearing on March 24, 2016. (A.R. 141-162.) On July 28, 2016, the ALJ issued a written

---

[1] The letter sent to Plaintiff stated her overpayment was $27,497.**70**. (A.R. 33, 37.) However, printouts from the SSA's computerized payment records show that the total overpayment was $27,497.**10**. (A.R. 56, 62.) A letter from the SSA, standing alone, does not constitute substantial evidence of the amount of the overpayment. *McCarthy v. Apfel*, 221 F.3d 1119, 1125 (9th Cir. 2000). Rather, "[p]ayments of Title II benefits are generally proved by the Commissioner through computerized SSA payment records and cancelled checks from the Treasury Department." *Id.* Accordingly, the Court finds the figure reflected in the SSA payment records is evidence of the correct amount of the overpayment.

decision determining that recovery of the overpayment should not be waived. (A.R. 9-16.)

Plaintiff requested review of the ALJ's decision. (A.R. 7-8.) On August 25, 2017, the Appeals Council issued a partially favorable decision in which it reduced the amount of the overpayment to account for the fact Plaintiff's federal tax refunds had been withheld to repay the overpayment.[2] (A.R. 2.) But the Appeals Council affirmed the portion of the ALJ's decision finding that recovery of the overpayment could not be waived. (*Id.*) This made the ALJ's determination the Commissioner's final decision for purposes of judicial review. 20 C.F.R. § 404.981. Thereafter, Plaintiff filed the instant action.

## II.   LEGAL STANDARDS

### A.   Scope of Review

The Social Security Act allows claimants to seek judicial review of the Commissioner's final agency decision. 42 U.S.C. §§ 405(g), 1383(c)(3). The scope of judicial review is limited. The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal

---

[2] It appears that the Appeals Council made a mathematical error in its revised calculation of the overpayment. The Appeals Council determined that the overpayment balance was $24,593.70 at the time of the hearing, less $160.00 that had been withheld from Plaintiff's federal tax refund for 2016. (A.R. 2.) Therefore, the Appeals Council stated the current balance was $24,473.70. (*Id.*) However, $24,593.70 minus $160.00 equals $24,433.70.

3

error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*, 44 F.3d at 1457. In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a

conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

### B. Applicable Law Regarding Overpayments

When a DIB recipient receives more disability benefits than she is entitled, the Commissioner may recover the overpayment. 42 U.S.C. § 404(a)(1)(A). The Commissioner may, however, waive repayment if: (1) the DIB recipient is without fault; and either (2) recovery of the overpaid benefits would defeat the purpose of Title II of the Social Security Act; or (3) recovery of the overpaid benefits would be against equity and good conscience. 42 U.S.C. § 404(b)(1).

The Social Security regulations define fault as: (1) an incorrect statement made by the individual that she knew or should have known to be incorrect; (2) failure to furnish information that she knew or should have known to be material; or (3) acceptance of a payment that she either knew or could have been expected to know was incorrect. 20 C.F.R. § 404.507; *McCarthy v. Apfel*, 221 F.3d 1119, 1126 (9th Cir. 2000). "In making these determinations of fault, the agency 'will consider all pertinent circumstances, including [the claimant's] age, intelligence, education, and physical and mental condition.'" *Anderson v. Sullivan*, 914 F.2d 1121, 1122 (9th Cir. 1990) (citing 20 C.F.R. § 404.507).

The definition of "fault" as used in the Social Security regulations "applies only to the individual." 20 C.F.R. § 404.507. Therefore, it is immaterial whether

5

the SSA was also at fault. "Although the Administration may have been at fault in making the overpayment, that fact does not relieve the overpaid individual ... from liability for repayment if such individual is not without fault." *Id. See also McElvain v. Comm'r of Soc. Sec.*, 2016 WL 4002018, at *3 (E.D. Cal. July 25, 2016) (stating that even where "there is no question that the Commissioner was at fault . . . the inquiry for purposes of whether recovery should be waived is focused not on the Commissioner's fault, but on whether *plaintiff himself* had any fault with respect to the overpayment.").

"[T]he Commissioner bears the burden of proving the fact and amount of overpayment." *McCarthy*, 221 F.3d at 1124. The plaintiff bears the burden of proving that she was without fault and that a waiver of repayments is warranted. *Id.* at 1126.

## III. FACTUAL BACKGROUND

### A. Timeline

In the late 1990's, Plaintiff began receiving disability benefits. (A.R. 147.) Eventually, she was able to return to work in 2006. (*Id.*)

On June 3, 2010, the SSA sent Plaintiff a notice indicating that it appeared her disability had ended because of substantial work activity. (A.R. 17-20.) The letter advised Plaintiff that it appeared she was not entitled to payments for October 2007 through January 2010. (*Id.*) The letter further advised Plaintiff that

6

she had 10 days to provide the SSA with more information before a final decision was made. (*Id.*)

On July 11, 2010, the SSA sent Plaintiff a follow-up letter stating it had determined she was "no longer entitled to Social Security disability payments for October 2007 through January 2010 because of substantial work." (A.R. 21-27.) The letter stated Plaintiff owed a $21,837.60 overpayment. (A.R. 22.) Curiously, however, the letter simultaneously informed Plaintiff that she was "entitled to payments for months beginning February 2010 because you are no longer doing substantial work." (A.R. 21.) Plaintiff was advised she would receive DIB benefit payments in the amount of $712 per month. (*Id.*)

On August 30, 2010, the SSA sent Plaintiff a "repayment withholding schedule." (A.R. 28-29.) The SSA stated that starting in September 2010, it would begin withholding her restarted DIB benefit payments and apply them to the outstanding overpayment. (*Id.*) The letter indicated the DIB benefit payments would be withheld through December 2012. (*Id.*)

On May 18, 2012, the SSA sent Plaintiff a "revised decision" regarding her benefits. (A.R. 30-32.) The SSA stated it had decided her disability had ended, and that she was "not entitled to payments for: October 2007 and continuing." (A.R. 30.) The SSA followed up with a letter dated June 7, 2012, stating it had paid her "$27,497.70 too much in benefits." (A.R. 33.) The letter went on to state

7

that it should have paid her nothing from February 2010 through May 2012, but had incorrectly paid her $22,820.40[3] for that time period. (*Id.*) Therefore, the SSA stated "we paid you $22,820.40 more than you were due." (*Id.*)

On June 13, 2012, the SSA sent Plaintiff a Billing Statement showing she owed a balance of $27,497.70. (A.R. 37.)

**B.     The Hearing**

A hearing was held before the ALJ in Billings, Montana on March 24, 2016. (A.R. 141-162.) Plaintiff testified that she returned to working in 2006, and that she was aware that going back to work would affect her benefits. (A.R. 147.) Plaintiff stated she knew she was supposed to report earnings of $1,000.00 or more, but that she did not report her wages because she assumed a computer system would alert the SSA since her employer used her social security number. (A.R. 148.)

Plaintiff stated that after she received the July 2010 letter indicating her benefits were going to be reinstated, she called the SSA. (A.R. 149.) She testified that she informed the SSA that she was working full-time, and that she had even received a raise. (A.R. 149, 152.) Plaintiff was told her benefits were being reinstated anyway. (A.R. 152.) Plaintiff stated she did not ask for the reinstatement. (A.R. 149.)

---

[3] It is unclear how the SSA arrived at this figure.

8

### C. The ALJ's Findings

In considering Plaintiff's request for a waiver of the overpayment, the ALJ first found Plaintiff was overpaid benefits in the amount of $27,497.70 during the period of October 2007 to May 2012. (A.R. 14.) Next, the ALJ found Plaintiff was not without fault in causing the overpayment. (A.R. 14-16.) The ALJ therefore, determined recovery of the overpayment should not be waived, and Plaintiff was liable for repayment of $27,497.70. (A.R. 16.) In reaching her conclusion, the ALJ discussed the overpayment in terms of two time periods: 1) a "first overpayment" for October 2007 through January 2010; and 2) a "second overpayment" for February 2010 through May 2012. (*Id.*)

With regard to the "first overpayment," the ALJ found Plaintiff was aware returning to work would affect her payments, yet she failed to report her work activity between June 2007 and February 2010 even though she continued to receive full benefits. (A.R. 15.) Thus, the ALJ concluded Plaintiff was not without fault for the "first overpayment" because she "failed to furnish information that she knew or should have known to be material, [and] she also accepted payments that she either knew or could have been expected to know were incorrect." (A.R. 15.) The ALJ also noted that there were no mental, educational, or linguistic limitations precluding Plaintiff from understanding her reporting requirements. (*Id.*)

9

With regard to the "second overpayment" of reinstated benefits, the ALJ found Plaintiff "did not receive any checks/deposits during this period of time, as all payments were applied to the claimant's previous overpayment." (A.R. 15.) Regardless, the ALJ stated "it was incumbent upon the claimant to furnish correct and material information to Social Security regarding the incorrect information in the July 11, 2010 letter, wherein Social Security was under the impression that the claimant had stopped all work activity." (A.R. 16.) Therefore, the ALJ concluded Plaintiff was not without fault for the "second overpayment" because she "failed to furnish information that she knew or should have known to be material." (A.R. 16.)

The ALJ further determined that even if Plaintiff was not at fault for the "second overpayment," consideration of equity and good conscience would not preclude recovery. (A.R. 16.) Again, the ALJ based this determination on her finding that "claimant had sufficient knowledge and familiarity with reporting requirements." *Id.*

## IV. DISCUSSION

As an initial matter, the Court will address the calculation of the overpayment, as it is unclear at first how the SSA determined Plaintiff owed $27,497.10. The letters the SSA sent to Plaintiff are confusing, incomplete, and generally lacking in detail. Indeed, at the hearing, the ALJ remarked that the

record was difficult to decipher. (*See e.g.* A.R. 156 ("So I mean this one -- the one that says, it says paid 22,820 from 2010 to 2012, I just don't know where that comes from. . . . I think that's incorrect, frankly. I just don't -- I don't know. I truly don't know."); 158 ("You know I have to tell you. I think this file is deficient in several reasons. I mean, I don't think we have all the notices. I mean it seems weird . . . that they would reinstate any benefits without sending a notice."); 159 ("I just don't think it's -- this is complete. It's very disjointed to me."); 160 ("I don't know what to think of it, not with what I have in front of me.").

As a starting point, neither party disputes Plaintiff was overpaid from October 2007 through January 2010 because she was working. However, after determining Plaintiff was no longer entitled to benefits, the SSA inexplicably reinstated Plaintiff's benefits as of February 2010. (A.R. 21.) The ALJ and Plaintiff refer to these two time periods as separate events. But upon review of the record, it appears that Plaintiff's benefits actually continued uninterrupted. The SSA payment record shows Plaintiff directly received a monthly benefit continuously from October 2007 through August 2010. (A.R. 58-59.) Specifically, $21,837.60 was paid from October 2007 to January 2010, plus an additional $5,659.50 was paid from February 2010 to August 2010 ($21,837.60 + $5,659.50 = $27,497.10). Then, starting in September 2019, the payments were suspended, and the benefits were redirected toward paying down the overpayment.

11

(A.R. 59-60.)

Plaintiff initially indicated that she did not receive any direct payments after January 2010. (Doc. 12 at 6.) But in reply, Plaintiff concedes that she received payments after January 2010. (Doc. 14 at 5.) Accordingly, there is no dispute that the additional $5,659.50 was paid, and is correctly part of the total overpayment.

With this understanding in mind, the Court turns to the ALJ's decision. Plaintiff concedes that she is responsible for the "first overpayment" of $21,837.60 from October 2007 through January 2010. But she argues the ALJ erred in not granting her a waiver as to the "second overpayment" that accrued after the SSA reinstated her benefits starting February 2010. The Commissioner counters that substantial evidence supports the ALJ's determination that Plaintiff was not entitled to a waiver for any portion of the $27,497.10 overpayment.

First, it is evident that the ALJ made a factual error in her findings. She stated Plaintiff did not receive any direct payments after January 2010. (A.R. 15.) The ALJ proceeded under the misapprehension that all of the reinstated benefits after January 2010 were redirected to pay down the outstanding overpayment. (*Id.*) However, the record shows that Plaintiff was in fact paid an additional $5,659.50 after January 2010. (A.R. 59.) Accordingly, the ALJ's decision is factually incorrect. *See Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357 (3d Cir. 2008) (ALJ's decision not supported by substantial evidence when it is based

on mistakes and mischaracterization of evidence). [4]

More importantly, however, the ALJ's determination is not supported by substantial evidence because the ALJ failed to make a credibility finding as to Plaintiff's testimony. The ALJ determined Plaintiff was not without fault as to the "second overpayment" because she did not furnish material information to the SSA regarding "the incorrect information in the July 11, 2010 letter, wherein Social Security was under the impression that the claimant had stopped all work activity." (A.R. 16.) However, Plaintiff testified that she did in fact, call and tell the SSA that she was working after she received the July 11, 2010 letter. (A.R. 149-152.) The ALJ did not discredit this statement, or otherwise acknowledge it. At most, the ALJ implicitly found Plaintiff not credible by finding she failed to tell the SSA material information about her work activity. But implicit credibility findings are not sufficient. *Albalos v. Sullivan*, 907 F.2d 871, 873-74 (9th Cir. 1990). Rather, "courts have consistently required that there be an explicit finding whether the

---

[4] While this could potentially be considered harmless error, it may be a factor for the ALJ to consider on remand. It may be possible for the ALJ to find that Plaintiff was not without fault as to the "second overpayment" under 20 C.F.R. § 404.507(c) on the basis that she accepted a payment that she either knew or could have been expected to know was incorrect. Because the ALJ thought Plaintiff did not receive any direct payments after January 2010, the ALJ did not have reason to consider whether that factor applied to the "second overpayment." Therefore, the ALJ may reconsider the factors under 20 C.F.R. § 404.507 in light of the fact that Plaintiff directly received $5,659.50 after the SSA restarted her benefits.

13

Secretary believed or disbelieved the claimant whenever the claimant's credibility is a critical factor in the Secretary's decision." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981) (reversing ALJ for failure to make explicit credibility finding in an overpayment case); *Albalos*, 907 F.2d at 873-74 (holding explicit credibility finding was required in an overpayment of benefits case). The Court finds Plaintiff's credibility on this point was critical to the without fault determination. Accordingly, because the ALJ failed to expressly discredit Plaintiff's testimony or articulate any reasons for questioning her credibility, the ALJ's fault determination is not supported by substantial evidence.

Finally, the ALJ also held that even if Plaintiff was without fault, consideration of equity and good conscience nevertheless precluded waiver. The ALJ's finding was again based on her determination that Plaintiff failed to report material information. In light of the fact the ALJ ignored Plaintiff's testimony that she told the SSA that she was working after it restarted her benefits, the Court finds the ALJ's decision in this regard is not supported by substantial evidence.

## V. CONCLUSION

The Court notes mathematical and/or scrivener's errors permeate the record and the parties' briefing in this case. Nevertheless, to the best of its ability, the Court has determined that $27,497.10 is an accurate accounting of the total

overpayment.[5] (*See* A.R. 62.)  Because Plaintiff does not dispute she owed $21,837.60, the Court will remand for a determination of whether Plaintiff is entitled to a waiver as to the "second overpayment" in the amount of $5,659.50.

Based on the foregoing, **IT IS ORDERED** that the Commissioner's decision be **REVERSED**, and this matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

**IT IS ORDERED**.

DATED this 18th day of March, 2019.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge

---

[5] The outstanding amount due as of the date of the Appeals Council's decision, was $24,433.10.  (A.R. 2; 61-62.)  The Court notes that this may not reflect Plaintiff's current overpayment balance, as additional tax refund withholdings and/or other payments may have been credited to the overpayment, which are not reflected in the record before the Court.